IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

WILLIAM KIRK SENZEE,                )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        Case No.  12-1416-CV-W-ODS-SSA
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social Security, )
                                    )
            Defendant.              )

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final
decision denying his application for disability insurance benefits under Title II of the
Social Security Act, 42 U.S.C. §§ 401 *et seq.*  The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born on April 30, 1959, and has a high school education and an
associates degree in construction management and building inspection.  He has prior
work experience as a building inspector and construction estimator.  Plaintiff alleges he
became disabled beginning May 7, 2009, due to a herniated disc, depression,
hypertension, and GERD (gastroesophageal reflux disease).  R. 182-83, 188.

On July 23, 2009, Plaintiff underwent abdominal and pelvic CT scans, which
showed negative results.  R. 344-45.  In October 2009, x-rays showed multi-level
degenerative disc disease in Plaintiff's thoracic and upper lumber spine, and facet joint
disease in his lumber spine.  R. 349-50.

On October 26, 2009, Q. Michael Ditmore, M.D., a State agency physician,
reviewed Plaintiff's file and assessed his capacity to perform work-related functions.  R.
351-56.  Dr. Ditmore found that Plaintiff: could lift twenty pounds occasionally and ten

pounds frequently; could stand, walk, or sit for up to six hours each in an eight-hour workday; should never climb ladders, ropes, or scaffolds; and should only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs. R. 352-53. He noted that Plaintiff's hypertension and GERD were both controlled with medication, but with respect to GERD "compliance appear[ed] to be a problem." R. 352. Dr. Ditmore concluded that Plaintiff's allegations were partially credible, but that the "[s]ymptom allegations appear disproportionate to [the] Medical evidence as to severity of Medically Determinable Impairment." R. 355.

Plaintiff saw his regular doctor, James LaSalle, D.O., on December 18, 2009, complaining of back pain. R. 427. Plaintiff told Dr. LaSalle that his back pain was of "moderate" severity, and it had been relieved in the past with medication. R. 427. Dr. LaSalle diagnosed Plaintiff with lumbago, and opined that Plaintiff was "not capable of doing routine work" on a daily or weekly basis. R. 404.

On February 16, 2010, Plaintiff presented to Craig Lofgreen, M.D., for a consultative examination. R. 390. Dr. Lofgreen found that Plaintiff produced a normal gait, a negative straight leg raising test, normal lower extremity neurological exam, and that Plaintiff could reach overhead without difficulty. R. 390. He opined that Plaintiff was not likely to be a surgical candidate because he had a "negative normal neurological exam." R. 390. Dr. Lofgreen also opined that it was unlikely that Plaintiff could engage in "significant repetitive heavy lifting" but noted "this may not be reasonable in a person of his age category at any rate." R. 390. He found that Plaintiff could stand or walk for up to 2 hours per day and had a normal use of his upper extremities. R. 390. Dr. Lofgreen ordered x-rays of Plaintiff's lumbar spine, which revealed Plaintiff's vertebral bodies had normal heights and density; disc spaces were preserved throughout; and no signs of rotation, scoliosis, or spondylolisthesis. R. 391.

Plaintiff followed-up with Dr. LaSalle on May 3, 2010. R. 423. Plaintiff's chief complaint was chronic back pain. R. 423. Dr. LaSalle found that Plaintiff's psychiatric exam was negative, that Plaintiff was cooperative and had appropriate mood and affect, and that Plaintiff's prescribed psychiatric medications seemed to be effective. R. 423-24. With regard to Plaintiff's gastrointestinal examination, Plaintiff had mild mid-epigastric discomfort to palpitation with no guarding or distention. R. 424. Dr. LaSalle

signed a note that said Plaintiff could not work a 40 hour work week due to chronic disabling back pain.  R. 413.

Plaintiff saw Dr. LaSalle on August 27, 2010, to re-fill his medication for his back pain.  R. 419.  Plaintiff's gastrointestinal exam again showed mild mid-epigastric discomfort to palpation, with no guarding or distention.  R. 420.  His psychiatric exam was again negative, and the medication deemed effective.  R. 419, 421.

At Plaintiff's December 17, 2010 visit with Dr. LaSalle, Plaintiff's chief complaints were that he had a rash and needed his prescriptions refilled.  R. 415.  Plaintiff described his back pain as "moderate."  R. 415.  He did not report any new gastrointestinal problems.  R. 415.  His neurological exam revealed no change in cognition, memory, balance, or unusual head pain.  R. 415.  With respect to Plaintiff's psychiatric assessment, Dr. LaSalle noted that Plaintiff had "good coping skill" to deal with "normal life stressors."  R. 415.

On January 15, 2011, Dr. LaSalle completed a residual functional capacity ("RFC") form relating to Plaintiff's physical and mental impairments.  R. 363.  He opined that Plaintiff could lift less than ten pounds, and could sit or walk for two hours in an eight-hour workday.  R. 363.  Dr. LaSalle opined that Plaintiff could not do any of the following: use his hands repetitively for simple grasping or fine manipulation; use his hands or arms for activities requiring repetitive motion; push and pull arm or leg controls repeatedly; or perform jobs requiring bilateral manual dexterity.  R. 363.  He also opined that Plaintiff could never squat, stoop, crouch, crawl, kneel, climb, reach, or maintain balance and that he could only occasionally bend.  R. 364.  When asked whether Plaintiff had any associated mental problems, Dr. LaSalle checked a box indicating that the following problems applied: depression, social isolation, poor self-esteem, and short attention span.  R. 365.  When asked to describe the clinical and laboratory findings on which his opinion was based, Dr. LaSalle responded, "I truly believe this [patient] is unable to work for a job 40 hours/wk."  R. 366.

Dr. LaSalle also completed a separate mental RFC assessment form.  R. 367-69.  Out of twenty listed functional categories, Dr. LaSalle found that Plaintiff was moderately limited in nine areas, marked limited in seven areas, and extremely limited in two areas.  R. 367-68.  He opined Plaintiff was marked limited in the ability to:

understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; respond appropriately to change in the work setting; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation. R. 367-8. Dr. LaSalle found that Plaintiff was extremely limited in the ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 367. When asked to describe the factors supporting his assessment, Dr. LaSalle wrote "I have care[d] for this [patient] since 2004 and have seen his clinical decline during that time." R. 368.

On January 16, 2011, Dr. LaSalle sent an email to Plaintiff's counsel and stated that Plaintiff was "not capable of working a full time job now or in the immediate future," and that Plaintiff's condition commenced "on or about May 2009." R. 371.

An administrative hearing was held on March 16, 2011. R. 40. At the hearing, Plaintiff testified he is unable to work because of his back injury and stomach problems. R. 48. He said his back pain was constant, and that it radiated through his hips and down both legs. R. 49-50. Plaintiff testified he could stand for five or ten minutes before the pain worsened, and he could sit for sixty to ninety minutes at a time. R. 52. To relive the pain, Plaintiff said he needed to lie down two or three times per day, from one to three hours at a time. R. 52. He testified that his doctor advised him to walk for exercise, but admitted that he had not done so except for a single half-mile walk with his daughter. R. 56-57. Plaintiff testified that he takes care of his twelve-year-old daughter every other weekend and cooks simple meals, occasionally does laundry, and shops for groceries. R. 54-57. He estimated that he could lift no more than sixteen pounds—a bag of cat food—without hurting himself. R. 57. Plaintiff spends his time watching television, reading, writing, playing fantasy football, and taking care of his cat. R. 56. He testified that he worked part-time in an office setting in 2009, and was fired when business slowed and "it just wasn't working out." R. 47-48.

4

The administrative law judge ("ALJ") rendered a decision on June 16, 2011. R. 19-27. At step one of the five-step sequential process, the ALJ determined Plaintiff has not engaged in substantial gainful activity during the period in question. R. 26. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine. R. 26. At step three, the ALJ determined Plaintiff's ailments do not meet or equal a listed impairment. R. 26. For steps four and five, the ALJ concluded Plaintiff has the following RFC:

> He is limited to lifting, carrying, pushing and pulling up to 10 pounds occasionally and 5 pounds frequently, standing and/or walking no more than 2 hours total in an 8-hour workday, and sitting no more than 6 hours total in an 8-hour workday. Balancing, stooping, kneeling, crouching, crawling and climbing of ramps and stairs could be performed occasionally, albeit claimant should never climb ladders, ropes or scaffolds.

R. 26-27. Next, the ALJ found, based on the vocational expert's testimony, Plaintiff is not prevented from performing his past relevant work as a construction estimator as that work is performed in the national economy. The ALJ also concluded Plaintiff has not met his burden of proving by substantial evidence that he is incapable of performing work as a construction estimator (as well as other sedentary, semi-skilled jobs to which his vocational skills would readily transfer) on a sustained, full-time basis. R. 27. Finally, the ALJ concluded Plaintiff has not been under a "disability," as defined in the Social Security Act as amended, at any time through the date of the decision. R. 27.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

III. DISCUSSION

A.  The ALJ Properly Discounted Plaintiff's Credibility

Plaintiff argues the ALJ improperly analyzed his credibility.  The Court disagrees. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  The Court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence."  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  In evaluating a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; (7) the absence of objective medical evidence to support the claimant's complaints.  *Id.*

Here, there is substantial evidence in the Record to support the ALJ's finding that Plaintiff's subjective allegations of disability were unsupported by the totality of the evidence.  First, the ALJ properly pointed out that Plaintiff's medical treatment was sporadic during the period at issue and there were no records of any ongoing physical therapy, pain management, epidural injections, or use of a TENS unit during the relevant period.  Additionally, there were no frequent hospital emergency room visits or inpatient hospitalizations for claimant for any physical complaints during the relevant period.  An ALJ may discount a claimant's credibility based on the "absence of hospitalizations . . ., limited treatment of symptoms, [and] failure to diligently seek medical care."  *Dukes v. Barnhart*, 436 F.3d 923, 923 (8th Cir. 2006); *see also Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegation of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications.").

Next, Plaintiff's medical treatment was conservative in nature, which is another factor discrediting Plaintiff's credibility.  *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir.

2001).  For example, Plaintiff testified that he was prescribed Cymbalta for depression from Dr. LaSalle.  However, Plaintiff never saw a psychologist, psychiatrist, or other mental health professional for depression.  With regard to Plaintiff's back pain, Plaintiff was instructed to take walks and was not referred to physical therapy and did not receive any epidural injections.

The Record also provides substantial evidence that medication was effective in controlling Plaintiff's symptoms.  "[I]mpairments that are controllable by medication do not support a finding of total disability."  *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729-30 (8th Cir. 2003).  In December 2009, Plaintiff told Dr. LaSalle that his back pain was relieved by medication.  R. 427.  In May 2010, Dr. LaSalle noted that Plaintiff's psychiatric medication seemed to be effective.  R. 423.  At the administrative hearing, Plaintiff testified that the medications prescribed for GERD "helped a lot."  R. 53.

Claimant testified that he worked from September 2009 to February 2010 as a construction estimator on a part-time basis.  However, Plaintiff's disability onset date was May 7, 2009.  Accordingly, Plaintiff's ability to work on a part-time basis after his alleged disability began is another proper basis for the ALJ to discredit Plaintiff's credibility.  *See Harris v. Barnhart*, 356 F.3d 926 (8th Cir. 2004) (not unreasonable for the ALJ to note that claimant's daily activities, including part-time work, was inconsistent with her claim of disabling pain).

The Court concludes that the ALJ properly assessed Plaintiff's credibility.  The Court will not substitute its opinion for that of the ALJ, who was in a better position to assess credibility.  *Brown v. Charter*, 87 F.3d 963, 965 (8th Cir. 1996).  Although it may be that any one of these factors alone would be insufficient to justify the ALJ's findings, collectively they serve as substantial evidence supporting the ALJ's decision.

### B.  The ALJ Properly Determined Plaintiff's RFC

Plaintiff argues the ALJ improperly determined his RFC by (1) failing to recognize Plaintiff's depression as a medically determinable impairment; and (2) improperly evaluating the medical opinion evidence, specifically the opinions of Dr. Ditmore and Dr. LaSalle.  The Court disagrees.

First, the ALJ properly determined that Plaintiff's alleged depression was not a medically determinable impairment. Plaintiff argues the ALJ was incorrect because Dr. LaSalle noted that Plaintiff had depression. Plaintiff cites to an RFC form which asked whether Plaintiff had any associated mental problems. Dr. LaSalle checked a box noting that Plaintiff had an associate mental problem of depression. R. 365. Plaintiff also argues that because he was prescribed Cymbalta his depression is a medically determinable impairment. Dr. LaSalle's exam records indicate Plaintiff was negative for psychiatric symptoms, he had good coping skills for normal life stressors, his psychiatric medications were effective, and that Plaintiff was cooperative and had appropriate mood and affect. R. 415, 419, 421, 423-24. Plaintiff never sought care from a psychologist, psychiatrist, or any other mental health provider. Additionally, the medical records do not refer to any complaints of severe depression or anxiety during the relevant time period. There is substantial evidence in the Record to support the ALJ's finding that Plaintiff's alleged depression was not a medically determinable impairment.

Next, Plaintiff asserts the ALJ's RFC is based on Dr. Ditmore's opinions but that "the ALJ omitted portions of Dr. Ditmore's opinions without any explanation . . . ." Plaintiff's Brief at 13. First, there is no evidence that the ALJ relied primarily on Dr. Ditmore's opinion. The ALJ's opinion merely stated that the findings and assessment of the State agency program physician were generally consistent with and supported by the totality of the evidence, but did not indicate how much weight was assigned to the opinion. R. 26. Second, as Defendant points out, the ALJ's RFC determination differed from Dr. Ditmore's in significant ways and many of the limitations in the RFC were more restrictive than Dr. Ditmore's opinions. For example, Dr. Ditmore found Plaintiff could lift ten pounds frequently and twenty pounds occasionally; the ALJ found Plaintiff could lift five pounds frequently and ten pounds occasionally. R. 26, 352. Dr. Ditmore found Plaintiff capable of standing and/or walking for six hour per workday; the ALJ found Plaintiff could do so for only two hours per day. R. 26, 352. Finally, the ALJ agreed with Dr. Ditmore regarding Plaintiff's postural limitations, but disagreed regarding Plaintiff's need to avoid concentrated exposure to extreme cold, vibration, or hazardous machinery. R. 26-27, 353-54. It was not error for the ALJ to not adopt every limitation assessed by Dr. Ditmore because "the ALJ is not required to rely entirely on a particular

8

physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011)

Finally, Plaintiff argues the ALJ erred in weighing Dr. LaSalle's opinions. The ALJ assigned "little weight" to Dr. LaSalle's opinions because he found them inconsistent with the totality of the medical evidence, including his own exam findings, and unsupported by Plaintiff's sporadic medical treatment and demonstrated level of functioning. R. 24. A treating physician's opinion can be discounted where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

Here, the Court concludes the ALJ did not err in assigning little weight to Dr. LaSalle's opinion. First, there is no evidence to support Dr. LaSalle's opinions that Plaintiff was moderately, markedly, or extremely limited in eighteen of twenty listed categories. Second, Dr. LaSalle opined that Plaintiff could not use either hand for simple grasping, fine manipulation, or activities requiring repetitive motion; could not perform jobs which require bilateral manual dexterity; could never reach; and could never maintain balance. R. 363-64. As Defendant correctly points out, these opinions are in direct conflict with Dr. Lofgreen's exam findings, which led him to conclude that Plaintiff had "normal use of the upper extremities" and "a negative normal neurological exam." R. 2, 390. Dr. LaSalle's own exam findings concluded that Plaintiff's neurological indications were normal or negative. R. 279, 334-35, 338-39, 404, 408, 416, 419, 422-23, 426. Third, Plaintiff worked on a part-time basis as a construction estimator for several months after his alleged onset date. R. 45, 47-48. That behavior contradicts Dr. LaSalle's opinion that Plaintiff could not grasp, use his hands for fine manipulation, or perform jobs requiring manual dexterity. R. 363. Fourth, Plaintiff testified that he could lift a sixteen-pound bag of cat food, yet Dr. LaSalle opined that Plaintiff could never lift ten pounds. R. 57, 363. Finally, Dr. LaSalle's opinions regarding Plaintiff's ability to work were not entitled deference because opinions that the claimant is "disabled" or "unable to work" are opinions on the ultimate issue of disability and reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1) and 416.927(d)(1); *see also House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's

opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination.").

## IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.


                                                  /s/ Ortrie D. Smith
                                                  ORTRIE D. SMITH, SENIOR JUDGE
DATE: October 16, 2013                            UNITED STATES DISTRICT COURT